IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARQUISE MILLER, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) )   Case No. CIV-20-946-D |
| LEGACY BANK, | ) ) |
|     Defendant. | ) ) |

# **ORDER**

Before the Court is Defendant Legacy Bank's ("Legacy") Motion for Summary Judgment and Brief in Support [Doc. No. 316]. Plaintiff filed a response in opposition [Doc. No. 334], to which Defendant replied [Doc. No. 336]. The matter is fully briefed and at issue.

## **BACKGROUND**

This case arises from Legacy's purported denial of a loan application allegedly submitted by Plaintiff. Plaintiff, an African American pastor in Oklahoma City, claims to have applied for an $80,000 commercial loan from Legacy to remodel his property located at 2110 N. Lottie Avenue. Plaintiff further claims that Legacy denied his alleged application because he is African American and because the property is located in a predominately Black neighborhood. In purportedly denying his alleged loan application, Plaintiff claims that Legacy violated the Equal Credit Opportunity Act ("ECOA"), which, among other things, makes it unlawful for a creditor to discriminate against an applicant on the basis of race.

In the instant Motion, Legacy argues that Plaintiff's ECOA claim fails as a matter of law. Specifically, Legacy contends: (1) Plaintiff never actually applied for the loan he claims was denied because of his race; (2) even if he did apply, Plaintiff cannot show that he was qualified for the loan; and (3) Plaintiff was not treated less favorably than similarly situated non-minorities. Therefore, Legacy argues, summary judgment is proper.

## UNDISPUTED MATERIAL FACTS[1]

On November 2, 2012, Rhama Counseling, L.L.C., an entity wholly owned by Plaintiff, filled out and submitted a written application for a line of credit from Legacy. On February 5, 2013, Legacy extended the line of credit to Rhama Counseling, L.L.C., which was secured by properties located at 933 NE 32nd and 908 NE 30th, Oklahoma City, Oklahoma.

According to Plaintiff, "[o]n or about October 14, 2015, the Plaintiff had contacted Chris Farris . . . and advised him of his interest in securing a loan." According to Plaintiff, he sought a commercial real estate loan "to remodel property at 2110 N. Lottie Avenue, Oklahoma City, OK 73111." Plaintiff "was seeking at least $80,000.00 from Legacy Bank for a loan with a maturity date of 10 years with a 6.5 interest rate."[2]

Legacy suggested that Plaintiff could seek a loan secured by 908 NE 30th and 933 NE 32nd or partially secured by cash Plaintiff held at Legacy. Plaintiff objected to the

---

[1] This statement includes material facts that are properly supported in the manner required by FED. R. CIV. P. 56(c)(1). If a party has asserted a fact, or asserted that a fact is disputed, but has failed to provide such support, the assertion is disregarded.

[2] Throughout this Order, the Court refers to this requested loan as the "2015 loan."

suggestion that he could secure a loan with cash, and he never offered to pledge 908 NE 30th and 933 NE 32nd as collateral. Plaintiff asked why he could not just use the property located at 2110 N. Lottie as collateral instead. According to Plaintiff, if Legacy would have advised him that his only two options for a loan were to secure the loan with cash or 908 NE 30th and 933 NE 32nd as collateral, then Plaintiff would have offered those properties as collateral.

On or about November 2, 2015, Plaintiff requested a loan from Arvest Bank for $125,000. The purpose of the loan—like the purpose of the loan Plaintiff sought from Legacy—was to rehab the property located at 2110 N. Lottie. The proposed collateral for the loan were the properties located at 908 NE 30th and 933 NE 32nd. Arvest did not approve a loan for Plaintiff for $125,000. When considering the loan, an Arvest loan officer stated on November 4, 2015, "I don't think we can get him what he is asking for but we might be able to counter with a 70% of the appraised value [of 908 NE 30th and 933 NE 32nd] since the financials are a little scattered and there is a little risk there."

On November 6, 2015, Arvest issued a proposal to extend credit accommodations to Plaintiff in a loan amount limited to the lessor of $81,000 or 75% of the combined appraised value of 908 NE 30th and 933 NE 32nd. However, Plaintiff did not qualify for a loan of at least $80,000 from Arvest because the combined appraised values of 908 NE 30th and 933 NE 32nd did not meet the 75% loan-to-value ratio.

On December 1, 2015, Plaintiff received a nine-year (108-month) loan from Arvest in the amount of $77,250, secured by 908 NE 30th and 933 NE 32nd, at a fixed rate of 6.5%. Plaintiff did not apply to Legacy for a loan secured by 933 NE 32nd and 908 NE

30th as collateral in 2015, and Legacy did not deny a loan application by Plaintiff for a loan secured by 933 NE 32nd and 908 NE 30th as collateral in 2015.

Legacy's loan policy required the same 75% loan-to-value ratio that Arvest Bank applied to Plaintiff's loan request. Further, it is Legacy's policy to obtain and consider the following information in connection with a real estate loan: (1) a credit application; (2) sufficient financial information to assist in the credit analysis; (3) credit report(s); (4) evidence of security perfection; and (5) other documentation required by policy, procedure, or requested by Legacy's Loan Committee. However, Plaintiff never submitted a credit application for any loan in 2015. Likewise, Plaintiff never provided current financial information to assist in the credit analysis in 2015.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable jury could return a verdict for the nonmoving party. *Id.* All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id.* at 255.

A movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show

4

a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see* FED. R. CIV. P. 56(c)(1)(A). The inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## DISCUSSION

I. **Legacy is entitled to summary judgment.**

The ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—(1) on the basis of race, color, religion, national origin, sex or marital status, or age . . . ." 15 U.S.C. § 1691(a). Plaintiff must establish the following elements for his prima facie case: "(1) [he] is a member of a protected class; (2) [he] applied for a loan from [Legacy]; (3) [he] was qualified for the loan; and (4) despite being qualified [his] loan application was denied." *Matthiesen v. Banc One Mortg. Corp.*, 173 F.3d 1242, 1246 (10th Cir. 1999).[3] Here, Plaintiff fails to raise a

---

[3] It appears to be an open question in the Tenth Circuit as to whether the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) governs ECOA claims. In *Matthiesen*, the court noted that, regardless of whether the district court applied the *McDonnell Douglas* burden-shifting framework, the plaintiff in an ECOA case "must demonstrate that he or she was a qualified borrower in the first place." *Matthiesen*, 173 F.3d at 1246 n.4. An ECOA plaintiff must also show that he or she actually applied for the at-issue loan. Here, Plaintiff fails to show that he applied for the 2015 loan or, even assuming he did apply, that he was a qualified borrower. Therefore, like in *Matthiesen*, because resolution of these two elements of Plaintiff's prima facie case is determinative, the Court does "not reach the question of whether the McDonnell Douglas standard applies in credit discrimination cases." *See id.*

genuine issue of material fact on two elements of his prima facie ECOA claim—that he applied for the 2015 loan and, even if he did apply, that he was a qualified borrower for the 2015 loan. Although either failure is on its own dispositive, the Court addresses each in turn.

      A.      **Plaintiff inquired about—but did not apply for—the 2015 loan.**

To trigger the ECOA's protections, Plaintiff must show that he actually applied for—not simply inquired about—the 2015 loan. Legacy argues that, at most, Plaintiff "merely engaged in inquiries . . . about hypothetical terms for a potential loan." Def.'s Mot. Summ. J. at 19.[4] Legacy relies primarily on three cases[5] that, according to Legacy, stand for the proposition that "merely making a request for credit is not sufficient to fall with[in] the scope of 'applicant' under the ECOA." *See id.* at 14-17. At bottom, Legacy contends that "Plaintiff never actually did get to the point of applying for the loan he alleges," and, thus, "Plaintiff was not an applicant for the loan he claims was denied because of race . . . ." *Id.* at 19, 20.

Plaintiff, on the other hand, relies primarily on the Fifth Circuit's decision in *AmeriPro* in arguing that it is "undeniable that [he] asked for credit for a set amount of $80000." Pl.'s Resp. at 8. More specifically, Plaintiff claims that his "application was written via email, processed, and considered by Chris Farris, Legacy Bank V.P., then

---

[4] All citations to the parties' filings reference the ECF file-stamped page number at the top of each page.

[5] *Lawrence v. Lenders for Cmty. Dev.*, No. C 10-00619 CRB, 2010 WL 4922662 (N.D. Cal. Nov. 29, 2010); *Wilson v. Cmty. Powered Fed. Credit Union*, No. CV 20-1258-RGA, 2021 WL 3678017 (D. Del. Aug. 19, 2021); *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698 (5th Cir. 2017).

6

ultimately denied based on the fifth and presumably final guideline, lending committee consideration." *Id.* at 8-9.

The ECOA makes it unlawful for Legacy "to discriminate against any *applicant*, with respect to any aspect of a credit transaction—(1) on the basis of race, color, religion, national origin, sex or marital status, or age . . . ." 15 U.S.C. § 1691(a) (emphasis added). The ECOA defines an "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b). And it is only "after receipt of a completed application for credit," and a subsequent "adverse action" from the creditor, that an "applicant" may bring a private right of action. 15 U.S.C. § 1691(d)(1)-(2). As for what constitutes a "completed application," the regulations issued to implement the ECOA provide the following:

> A *completed application* means an application in connection with which a creditor has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested (including, but not limited to, credit reports, any additional information requested from the applicant, and any approvals or reports by governmental agencies or other persons that are necessary to guarantee, insure, or provide security for the credit or collateral).

12 C.F.R. § 202.2(f) (emphasis in original); *see also High v. McLean Fin. Corp.*, 659 F. Supp. 1561, 1564 (D.D.C. 1987) ("[A]n application is considered 'complete' not when the applicant completes it—as plaintiff would have it—but when the creditor has obtained verifying information and whatever other types of reports or information it ordinarily requires to evaluate a loan.").

Upon consideration, the Court finds that the requirements of 15 U.S.C. § 1691 were never triggered because Plaintiff inquired about, but never actually applied for, the 2015 loan. Plaintiff contends that he sought "at least $80,000.00 from Legacy Bank for a loan with a maturity date of 10 years with a 6.5 interest rate" and that he was "willing to use 933 NE 32nd and 908 NE 30th as collateral." Compl. [Doc. No. 27], ¶¶ 38, 79. That Plaintiff proposed the potential terms of a potential loan appears to be undisputed. But proposing the potential terms of a potential loan and actually *applying* for a loan are different things. The plain text of the ECOA applies only to "applicants," and an ECOA plaintiff may challenge an adverse action only "after receipt of a completed application for credit." 15 U.S.C. §§ 1691(a), 1691(d)(1)-(2).

Numerous courts addressing similar circumstances have concluded that an application for purposes of the ECOA is not complete until the creditor obtains information that is ordinarily required to evaluate a loan—including a formal loan application. *See, e.g.*, *Howard Oaks, Inc. v. Md. Nat. Bank*, 810 F. Supp. 674, 678 (D. Md. 1993) ("In its opposition, plaintiff admits never having submitted a 'formal application,' but argues that the defendant bank was supplied with 'additional information in the forms of letters and documents.' Under the plain language of the regulation, ECOA liability cannot rest upon anything but a 'completed application . . . .'"); *Riggs Nat. Bank of Wash., D.C. v. Webster*, 832 F. Supp. 147, 150 (D. Md. 1993) ("An application is not 'complete' until the 'creditor has received all the information it regularly obtains and considers in evaluating applications . . . .'"); *Lawrence*, 2010 WL 4922662, at *6 ("An application is 'completed' when the creditor has received all of the information that it regularly obtains and considers in

8

evaluating applications. Here, the Opportunity Fund's paperwork included the previous two years' business income tax returns, and Plaintiff conceded that he did not provide a 2006 tax return. Accordingly, Plaintiff's application was never completed as defined by the relevant regulations, and so the Opportunity Fund did not violate ECOA.") (internal citations omitted).

Here, the undisputed facts show that it is Legacy's policy to "obtain and consider," among other things, a "credit application" and "[s]ufficient financial information to assist in the credit analysis." *See* Def.'s Mot. Summ. J., Ex. 6 [Doc. No. 319]; Def.'s Mot. Summ. J., Ex. 4 [Doc. No. 316-4], ¶ 4. Despite that, Plaintiff never submitted a credit application for any loan in 2015 and never provided current financial information to assist in the credit analysis in relation to the 2015 loan. *See* Def.'s Mot. Summ. J., Ex. 4, ¶ 6; Def.'s Mot. Summ. J., Ex. 7 [Doc. No. 316-7]; Def.'s Mot. Summ. J., Ex. 8 [Doc. No. 320] at 2; Def.'s Mot. Summ. J., Ex. 4, ¶ 7.[6] Indeed, Plaintiff's own after-the-fact statement supports the conclusion that he never formally filled out any documentation regarding the 2015 loan. *See* Def.'s Mot. Summ. J., Ex. 7 at 2 (in describing why he thinks he is a victim of housing

---

[6] Plaintiff relies on emails between himself and Chris Farris, in which Mr. Farris states that Plaintiff's loan proposal was not acceptable to Legacy's Lending Committee. *See, e.g.*, Pl.'s Resp. at 8-9; *see also* Second Am. Compl., Ex. 1 [Doc. No. 27-1], Ex. 2 [Doc. No. 27-2]. Even in the specific email Plaintiff relies on, Mr. Farris refers only to Plaintiff's "Lottie request"—not any sort of completed loan application or specific financial information. Although not particularly supportive of either party's position, the Court cannot, on the record before it, construe one email (in what appears to be part of a chain of emails between Plaintiff and Mr. Farris) as a formal denial of a completed loan application. And even if Mr. Farris's emails could be construed as discouraging Plaintiff from actually applying for a loan, such discouragement cannot form the basis of Plaintiff's ECOA claim. *See Wilson*, 2021 WL 3678017, at *3 ("The statute provides no cause of action for an 'aggrieved prospective applicant.' Discouragement of a 'prospective applicant' may be regulatorily prohibited, but it cannot form the basis of a private claim or cause of action under the ECOA.") (quoting *AmeriPro*, 848 F.3d at 708).

discrimination, Plaintiff stated that he "was never even asked to fill out a loan application").[7]

Because Plaintiff never provided Legacy with all of the information it typically obtains and considers in evaluating a loan application, he is not an "applicant" for purposes of the ECOA.[8] Legacy is, therefore, entitled to summary judgment.

**B.      Plaintiff fails to present evidence showing that he was qualified for the 2015 loan.**

Even assuming Plaintiff actually applied for the 2015 loan, he must also show that he was a qualified applicant. Legacy contends that, because Plaintiff purportedly may have been willing to use 933 NE 32nd and 908 NE 30th as collateral, expert testimony "is indispensable to Plaintiff's claim." Def.'s Mot. Summ. J. at 21. That is because "[t]estimony regarding the value of real estate is not admissible as lay witness opinion testimony under Rule 701 of the Federal Rules of Evidence." *Id.* Here, Legacy asserts that, because Plaintiff cannot establish the value of the above properties in 2015 either through documentary evidence or admissible expert testimony, there is no factual basis for concluding that he was a qualified applicant. *See* Def.'s Reply at 8-9. Legacy further argues

---

[7] Notably, the Oklahoma State Banking Department reached the same conclusion: "The Loan request that is the subject of this complaint was initiated in September 2015 but no written loan application was submitted by Marquise Miller." *See* Def.'s Mot. Summ. J., Ex. 8.

[8] Plaintiff includes a lengthy quote from the Eleventh Circuit's decision in *Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1190-91 (11th Cir. 2019) in support of his contention that he was an applicant for the 2015 loan. *See* Pl.'s Resp. at 6-8. Although the *Regions Bank* court did analyze the term "applicant" as used in the ECOA, it did so for a different reason and in a different context. There, the issue was "whether a guarantor constitutes an 'applicant' under the [ECOA]." *Regions Bank*, 936 F.3d at 1187. The court did not engage in a factual inquiry to determine whether a first-party loan seeker qualified as an "applicant." Rather, the court held, as a matter of law, that a guarantor is not an "applicant" for credit under the ECOA. *See id.* at 1200. The Court, therefore, believes Plaintiff's reliance on *Regions Bank* is misplaced.

10

that, even if Plaintiff could establish the value of 933 NE 32nd and 908 NE 30th in 2015, the undisputed facts show that the properties were insufficient to satisfy Legacy's real estate lending criteria. Def.'s Mot. Summ. J. at 23.

Plaintiff counters that his longstanding relationship with Legacy "served as an ample base for [his] application" and "renders three of the five requirements null." Pl.'s Resp. at 10. Although Plaintiff's argument is difficult to follow, it seems that he takes issue with a purported lack of transparency from Legacy, which allegedly included shifting requirements and explanations for denying Plaintiff's purported loan application. *See id.* at 11-12. Plaintiff does not squarely address Legacy's contention that its loan-to-value requirement for the 2015 loan was 75%, nor does Plaintiff directly contend that he has sufficient expert testimony or documentary evidence to establish the value of 933 NE 32nd and 908 NE 30th.[9]

To show he was qualified, Plaintiff must "meet the lender's requirements for collateral [and] establish personal creditworthiness." *Latimore v. Citibank*, 151 F.3d 712, 714 (7th Cir. 1998). Here, Legacy's loan policy states that it is Legacy's "policy that loan-to-value (LTV) limits be observed, and that real estate loan amounts not exceed [certain]

---

[9] Legacy's undisputed material fact 23 states that its "loan policy required the same 75% loan-to-value ratio that Arvest Bank applied to Plaintiff's loan request." Def.'s Mot. Summ. J. at 10. In his response, Plaintiff purports to deny fact 23 and claims that "Legacy's loan-to-value ratios for properties 933 NE 32nd and 908 NE 30th was 80 percent." Pl.'s Resp. at 5. Plaintiff cites to Exhibit 1 to his Response, which is a "Commitment Report" dated May 5, 2014. *See* Pl.'s Resp., Ex. 1 [Doc. No. 334-1]. However, the document explicitly states that the loan-to-value requirement for the proposed loan is 75%. *See id.* It appears that, in May of 2014, the value of the properties met the 75% requirement, but, as discussed *infra*, that valuation was assigned to the properties more than a year before Plaintiff inquired about the 2015 loan.

11

percentages based upon the type of real estate used as collateral." Def.'s Mot. Summ. J., Ex. 6 at 5. Because Plaintiff purportedly sought to secure the 2015 loan with the properties at 933 NE 32nd and 908 NE 30th, Legacy would require a 75% loan-to-value ratio. *Id.*

Upon consideration, the Court finds that Plaintiff fails to provide specific facts showing that he met Legacy's lending requirements and was, therefore, qualified for the 2015 loan. First, Plaintiff relies on no expert testimony to establish the value of 933 NE 32nd and 908 NE 30th. Although Plaintiff designated himself as an expert [Doc. No. 287], his expected testimony purports to go to the "Lottie Property" being sufficient collateral in 2015 to obtain financing. *See id.* at 2. Specifically, Plaintiff plans to opine that "the 'as completed appraisal' that Legacy ordered on the Lottie Property would have yielded very conservatively at least $240,000 dollars [sic] in appraised value." *Id.* In other words, even assuming he is qualified to offer the opinion testimony set forth in his expert disclosure, Plaintiff apparently plans to opine about what the value of the Lottie Property *might have been* had an appraisal been conducted. Plaintiff does not rely on any documentary evidence or independent analysis—such as an appraisal—regarding the value of 933 NE 32nd and 908 NE 30th or the Lottie Property, and, therefore, there is nothing in the record for the Court to consider on that front.[10]

---

[10] Setting aside Plaintiff's lack of sufficient expert testimony or documentary evidence regarding the value of 933 NE 32nd and 908 NE 30th, the undisputed facts otherwise establish that Arvest denied a loan to Plaintiff for "at least $80,000" because the combined appraised values of 933 NE 32nd and 908 NE 30th did not meet a 75% loan-to-value ratio—a ratio required by both Legacy and Arvest.

In an apparent attempt to otherwise show he was qualified for the 2015 loan, Plaintiff argues that he had a longstanding relationship with Legacy and "maintained several thousand dollars in a Legacy account." Pl.'s Resp. at 9. Plaintiff further argues that Legacy previously valued 933 NE 32nd and 908 NE 30th at more than $100,000. *See id.* Neither argument is persuasive. First, Plaintiff points to no authority—and the Court is aware of none—standing for the proposition that a longstanding relationship with a financial institution, on its own, renders a purported applicant qualified for a specific loan. To the contrary, courts have held that, at minimum, an applicant must "meet the lender's requirements for collateral [and] establish personal creditworthiness." *Latimore*, 151 F.3d at 714. Second, even if Legacy valued 933 NE 32nd and 908 NE 30th at more than $100,000 at any point in the past, Plaintiff presents no evidence that Legacy assigned the properties that value within twelve months of Plaintiff's October 14, 2015 loan inquiry. Legacy's Loan Policy makes this timing requirement explicitly clear. *See* Def.'s Reply, Ex. 4 [Doc. No. 340] at 2 (Legacy Loan Policy stating that Legacy "may rely on an existing appraisal for a subsequent transaction, provided that the appraisal was obtained within the past 12 months . . . ."). Therefore, even assuming Legacy previously valued 933 NE 32nd and 908 NE 30th at more than $100,000, Plaintiff provides no evidence that such past valuation supports his contention that he was qualified for purposes of the 2015 loan.

Because Plaintiff fails to present evidence showing that he qualified for the 2015 loan, Legacy is entitled to summary judgment.

## CONCLUSION

For these reasons, Defendant Legacy Bank's Motion for Summary Judgment [Doc. No. 316] is **GRANTED**.

Defendant's Motion to Exclude Expert Testimony by Plaintiff, Marquise Miller [Doc. No. 310] is deemed **MOOT**.

A separate judgment will be entered accordingly.

**IT IS SO ORDERED** this 7th day of May, 2024.

*[Signature]*

TIMOTHY D. DeGIUSTI
Chief United States District Judge